USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 29, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                :

SMART INSURANCE COMPANY,        :
                                                :
            Plaintiff,      :
                                                :
          -v-             :      15-cv-4384 (KBF)
                                                :
BENECARD SERVICES, INC.,       :      <u>OPINION & ORDER</u>
                                                :
            Defendant.     :
                                                :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

     Smart Insurance Company ("Smart") brought this action in June 2015 alleging claims for breach of contract and fraudulent misrepresentation/omission and fraudulent concealment against Benecard Services, Inc. ("Benecard") arising out of Benecard's alleged failure to manage Smart's Medicare Part D Prescription Drug Plans.  Benecard also has a single counterclaim against Smart for breach of contract.  Trial is set to commence on September 19, 2016.

     Pending before the Court is Smart's motion for an Order finding Benecard in civil contempt and imposing sanctions pursuant to the Court's inherent powers and/or Federal Rule of Civil Procedure 37.  (ECF No. 77.)   Smart's motion arises from its claim that Benecard's counsel violated this Court's December 8, 2015 Memorandum Decision & Order (the "December 8 Order") directing Benecard and its counsel to, <u>inter alia</u>, "cease further attempts at interference with Smart's interviews" of former Benecard employees.  (ECF No. 60.)  Smart claims that Benecard's counsel violated the December 8 Order when, in a January 28, 2016

telephone conversation (the "January 28 Call"), they instructed Jeffrey Reed, a former Benecard employee, to not speak with Smart's counsel.  Benecard opposes the motion on several grounds, including, <u>inter alia</u>, that the evidentiary record does not support a finding that counsel violated the December 8 Order and that, in any event, Smart has not shown that it suffered any prejudice even if such an instruction had been given.

In relation to the pending motion, the Court has received numerous written submissions from the parties and has held two evidentiary hearings.  At those hearings, the Court heard sworn live testimony from all three participants on the January 28 Call, including two attorneys for Benecard—Brian John Pendleton, Jr. (lead counsel in this action) and Gina Trimarco (formerly associated with Mr. Pendleton's firm and who has since moved on to other employment)—as well as Benecard's former employee, Mr. Reed.  As explained below, counsels' testimony is irreconcilable with the testimony offered by Mr. Reed; the Court found Mr. Reed consistent, reliable and credible.  Thus, in addition to addressing counsels' alleged violation of the December 8 Order, this motion also presents one of the most distasteful tasks that a court has to face (and fortunately such issues arise rarely)— namely, having to determine whether an attorney(s) appearing before it has intentionally misled the Court.

As set forth below, based on a careful consideration of the whole record before it on this motion (including the Court's credibility assessments based on the aforementioned live testimony), the Court finds by clear and convincing evidence

that Mr. Pendleton intentionally violated the Court's unambiguous December 8 Order by instructing Mr. Reed to not speak with Smart or its counsel, and that Ms. Trimarco was complicit in that violation.  The Court therefore holds Mr. Pendleton in civil contempt and imposes sanctions against both Mr. Pendleton and Ms. Trimarco pursuant to its inherent powers as set forth in this decision.[1]  That contemptuous conduct was significantly and seriously worsened by Mr. Pendleton's and Ms. Trimarco's intentional and knowing false testimony under oath on this issue.  Notwithstanding the foregoing, because there is no evidence in the record showing that Benecard itself—as opposed to its counsel—has in any way participated, been complicit in, or had any knowledge of counsels' misconduct, and Smart has not shown that it suffered any prejudice as a result of that misconduct, the Court does not impose any separate additional sanctions against Benecard.  All sanctions are against Mr. Pendleton and Ms. Trimarco personally (and against Mr. Pendleton's firm).  Accordingly, for the reasons set forth below, Smart's motion is GRANTED IN PART.

---

[1] Although Smart's motion seeks to have Benecard itself held in contempt—rather than Benecard's counsel—Mr. Pendleton and Ms. Trimarco have had adequate notice and a fair opportunity to be heard as to whether they should be held in contempt or have other sanctions imposed against them. They have had notice of the allegations that they personally violated the December 8 Order, Mr. Pendleton's partner, Richard Hans, was brought in as counsel to handle the motion and had the opportunity to present their own testimony, cross-examine Mr. Reed, and submit a supplemental brief in response to Mr. Reed's testimony.  This is sufficient notice to allow the Court to hold Mr. Pendleton in civil contempt and to warrant sanctions against Ms. Trimarco.  See Fonar Corp. v. Magnetic Resonance Plus, Inc., 128 F.3d 99, 102 (2d Cir. 1997).  The Court notes, furthermore, that this result is consistent with the position taken by counsel in Benecard's supplemental brief, which argues that "if this Court were to impose a sanction, it should be imposed solely on counsel and not the client." (Benecard's Supp. Mem. of Law at 14, ECF No. 141.)

I.     BACKGROUND[2]

Smart commenced this action in June 2015 alleging claims for breach of contract and fraudulent misrepresentation/omission and fraudulent concealment against Benecard arising out of Benecard's alleged failure to manage Smart's Medicare Part D Prescription Drug Plans.  (Compl., ECF No. 1.)  After the Court denied Benecard's partial motion to dismiss the Complaint (ECF No. 34), in October 2015 Benecard filed its Answer and alleged four counterclaims (ECF No. 40).  The Court subsequently granted Smart's motion to dismiss three of those counterclaims in a January 27, 2016 Memorandum Decision & Order (ECF No. 68), after which Smart filed an Answer to Benecard's sole remaining counterclaim (ECF No. 70).

A.     The December 8 Order

In the meantime, while discovery was proceeding, Smart filed a letter motion on November 18, 2015 that sought an order restraining Benecard from further interfering with Smart's informal discovery efforts to speak to Benecard's former employees.  (ECF No. 50.)  The letter explained that Benecard had sent letters to Smart asserting that Smart could not contact or interview any former Benecard employees, and stated that Smart had become aware that Benecard had sent a threatening letter to at least one former employee named James Jones (whom Smart asserted is a key witness in this action), instructing Jones to have no further contact with Smart.  Benecard opposed the motion by arguing, in part, that Smart had not yet engaged in a meet and confer as required by this Court's Individual

---

[2] The Court here provides only that background which is pertinent to the pending motion.  The Court separately makes the findings supporting the sanctions being imposed in the Discussion section of this decision.

Rules.  (ECF No. 52.)  As a result, the Court directed the parties to meet and confer on the issues raised in Smart's letter, and granted Smart leave to renew the motion should the parties' discussions fail to resolve the issue.  (ECF No. 53.)

Smart renewed its letter motion on November 30, 2015, restating its argument that it had the right to conduct informal discovery of former Benecard employees without Benecard's interference.  (ECF No. 54.)  Benecard opposed the renewed motion on December 3, 2015, in which it raised concerns that Smart was inducing former Benecard employees to improperly divulge information governed by confidentiality agreements, and asked the Court to direct Smart to produce its notes of interviews of former employees and allow Benecard to participate in any future interviews of such individuals.  (ECF No. 56.)

Based on the parties' submissions, the Court issued the December 8 Order, which underlies Smart's pending motion for sanctions.  (ECF No. 60.)  In relevant part, the December 8 Order directed Benecard to "cease further attempts at interference with Smart's interviews" of former Benecard employees and required Benecard to "send corrective letters to the individuals already contacted."  (ECF No. 60.)[3]  The December 8 Order also directed Smart to inform any former Benecard employees at the outset that Smart understood that the individual may have certain confidentiality obligations to Benecard and that Smart was not asking the individual to share any confidential information; the Court also directed Smart to inform such former Benecard employees that if they would like to consult with

_____

[3] After the parties raised a further dispute as to the contents of the corrective letters (ECF Nos. 63, 64), the Court issued an Order on December 30, 2015 providing the precise language that Benecard was to send to former employees it had previously contacted (ECF No. 65).

Benecard as to what may or may not be covered by confidentiality obligations, they may communicate with counsel for Benecard.[4]  At the evidentiary hearing held on May 5, 2016—which the Court further describes below—Mr. Pendleton agreed that the December 8 Order was perfectly clear.  (5/5/16 Hr'g Tr. at 12:14-13:6, ECF No. 108.)

B.    The Instant Motion

On April 6, 2016, Smart filed the pending motion seeking sanctions, contempt and a further Order regarding the right of Benecard's former employees to speak to Smart.  (ECF No. 77.)  As stated above, the motion raises serious allegations that Benecard's counsel directly violated the December 8 Order by instructing former Benecard employee Jeffrey Reed to not speak to Smart or its counsel after Mr. Reed had previously expressed a willingness to do so in an earlier conversation with Smart's counsel.  At the outset of its motion, Smart's evidence supporting these allegations was as follows.

Daniel Barnowski, counsel for Smart in this action, proffered that he had spoken with Reed by telephone in May 2015, during which Reed was cooperative, spoke freely and frankly about Benecard's conduct while he was employed there, and expressed a willingness to speak with Smart in the future.  (4/6/16 Barnowski Decl. ¶ 3, ECF No. 79.)  When it came time for the parties to begin scheduling depositions in early 2016, Benecard informed Smart that it would attempt to

---

[4] The December 8 Order also rejected Benecard's contention that it had the right to interfere with Smart's inquiries because of confidentiality agreements with former employees, as well as Benecard's argument that it was entitled to copies of Smart's attorney interview notes from prior interviews and to be present at future interviews.

coordinate the scheduling of Mr. Reed's deposition (among others), but later reported that it could not procure Mr. Reed's cooperation.  (4/6/16 Barnowski Decl. ¶ 13.)  Smart subsequently made numerous inquiries directly to Mr. Reed, who finally confirmed in a brief phone call that he would be attending a scheduled deposition under subpoena.  (4/6/16 Barnowski Decl. ¶¶ 14-16.)  Because of its prior inability to reach him, Smart was unable to interview Mr. Reed or otherwise prepare him for his testimony before the deposition.  (4/6/16 Barnowski Decl. ¶ 17.)

On March 23, 2016, Mr. Reed was deposed.  At his deposition, Mr. Reed testified that he had previously communicated with Benecard's counsel, who had told him to "not talk to anybody at Smart or their legal counsel."  (4/6/16 Barnowski Decl., Ex. 3 ("Reed Dep. Tr.") at 11:10-12:24.)  Mr. Reed did not recall the name of the attorney who had called him or precisely when the call occurred, but believed that it had occurred no earlier than January 2016.  (Reed Dep. Tr. at 11:10-12:24, 98:18-100:7.)  Mr. Barnowski represented that Mr. Reed's testimony at his deposition was helpful to Smart's case.  (4/6/16 Barnowski Decl. ¶ 21.)

Benecard opposed Smart's motion on April 13, 2016, arguing that the two lawyers who spoke with Mr. Reed—Mr. Pendleton and Ms. Trimarco[5] (who each submitted sworn supporting declarations)—did not engage in any conduct that violated the Court's December 8 Order and that, in any event, Smart suffered no prejudice.  (ECF No. 84.)  Mr. Pendleton and Ms. Trimarco proffered that their office had sought to contact Mr. Reed beginning in approximately October 2015, but

---

[5] At least as of May 5, 2016, Ms. Trimarco is no longer employed by Benecard's counsel firm, DLA Piper LLP (US); she therefore does not currently represent Benecard in relation to this action.  (See 5/5/16 Hr'g Tr. at 2:10-11.)

was unable to reach him despite numerous attempts to do so.  (4/13/16 Pendleton Decl. ¶¶ 2-4, ECF No. 85; 4/13/16 Trimarco Decl. ¶ 2, ECF No. 86.)  Mr. Pendleton and Ms. Trimarco further proffered that they spoke with Mr. Barnowski by phone on January 26, 2016, and agreed to try to contact Mr. Reed again to determine if he would voluntarily appear for a deposition.  (4/13/16 Pendleton Decl. ¶ 5; 4/13/16 Trimarco Decl. ¶ 3.)  Mr. Pendleton and Ms. Trimarco each stated that together they successfully reached Mr. Reed by phone on January 28, 2016 and spoke to him for less than ten minutes.  (4/13/16 Pendleton Decl. ¶¶ 6-7; 4/13/16 Trimarco Decl. ¶ 4.)  Mr. Pendleton further explained that, during the call, he and Ms. Trimarco: (1) provided Mr. Reed with basic background information about the dispute between Smart and Benecard, (2) asked if Mr. Reed would be willing to voluntarily appear for a deposition at some point in the future, and (3) asked if Mr. Reed would be willing to meet with Benecard's counsel in advance of the deposition.  (4/13/16 Pendleton Decl. ¶ 8.)  Mr. Pendleton and Ms. Trimarco each proffered that Mr. Reed expressed his willingness to both sit for a deposition and to meet with Benecard's counsel in person in advance of the deposition.  (4/13/16 Pendleton Decl. ¶ 9; 4/13/16 Trimarco Decl. ¶ 4.)  Mr. Pendleton and Ms. Trimarco each stated that neither of them ever instructed Mr. Reed to not speak with Smart or its counsel.  (4/13/16 Pendleton Decl. ¶ 11; 4/13/16 Trimarco Decl. ¶ 5.)  Ms. Trimarco proffered that she left several telephone messages for Mr. Reed in attempt to follow up on the January 28 Call, but stated that none of those calls were returned and she had not spoken with Mr. Reed since the January 28 Call.  (4/13/16 Trimarco Decl. ¶¶ 6-7.)

Smart filed its reply brief on April 18, 2016 (ECF No. 89), along with supporting declarations from Mr. Barnowski and Gary Meyerhoff, another of Smart's counsel in this action.  Mr. Barnowski and Mr. Meyerhoff state that, after being informed that Benecard was unable to procure Mr. Reed's cooperation, they attempted to contact Mr. Reed on several occasions, but were unable to reach him.  (4/18/16 Barnowski Decl. ¶¶ 5-9, ECF No. 91; 4/18/16 Meyerhoff Decl. ¶¶ 6-10, ECF No. 90.)  Mr. Barnowski states that he was finally able to reach Mr. Reed by phone on March 16, 2016, who confirmed that he would appear for the deposition; however, Mr. Reed's demeanor and tone on the call were unfriendly.  (4/18/16 Barnowski Decl. ¶ 10.)[6]  With leave of the Court (ECF No. 93), Benecard subsequently filed a sur-reply on April 20, 2016 (ECF No. 95).

On April 20, 2016, the Court directed Smart to provide the Court with copies of the transcript and video recording of Mr. Reed's deposition.  (ECF No. 94.)  On April 25, 2016, after reviewing these materials, the Court issued an Order scheduling an evidentiary hearing for May 5, 2016, and directed both lawyers who participated in the January 28 Call with Mr. Reed (that is, Mr. Pendleton and Ms. Trimarco) to attend the hearing and be prepared to state under oath everything they could recall was said during that conversation.  (ECF No. 98.)

---

[6] Mr. Barnowski and Mr. Meyerhoff also challenged Mr. Pendleton's and Ms. Trimarco's recollections of the January 26, 2016 call among counsel, asserting that Smart had not asked Benecard to coordinate a deposition for Mr. Reed before Benecard made the January 28 Call.  (See 4/18/16 Barnowski Decl. ¶¶ 14-22; 4/18/16 Meyerhoff Decl. ¶¶ 15-23.)  Ms. Trimarco challenged this understanding based on a contemporaneous internal email circulated among Benecard's counsel that Benecard submitted along with its sur-reply brief.  (4/20/16 Trimarco Decl., Ex. A, ECF No. 96.)  The Court need not further describe or make factual findings regarding this collateral dispute because it is immaterial to the Court's resolution of Smart's sanctions motion.

C.   <u>May 5, 2016 Evidentiary Hearing</u>

On May 5, 2016, the Court held an evidentiary hearing, at which Mr.

Pendleton and Ms. Trimarco testified under oath.  Mr. Pendleton testified first,

outside of Ms. Trimarco's presence.  (5/5/16 Hr'g Tr. 5:3-10.)  Mr. Pendleton testified

that, during the January 26 call with Smart's counsel, Mr. Barnowski asked if Mr.

Reed was under Benecard's control to be produced for a deposition, and Mr.

Pendleton responded that he did not know and would get back to Mr. Barnowski.

(5/5/16 Hr'g Tr. at 7:9-12.)  Mr. Pendleton stated that he and Ms. Trimarco

unsuccessfully tried to reach Mr. Reed on January 26, 2016 and left a voicemail

message.  (5/5/16 Hr'g Tr. 7:13-15.)  They again called Mr. Reed on January 28,

2016; Mr. Pendleton described the conversation that followed as a "very nice,

pleasant discussion" that lasted approximately five minutes.  (5/5/16 Hr'g Tr. at

7:21-8:8.)  Mr. Pendleton and Ms. Trimarco explained to Mr. Reed that they

represented Benecard in a litigation that had been filed against it in federal court in

New York and explained what the case was about.  (5/5/16 Hr'g Tr. at 8:8-8:11.)

They then explained that the other side was interested in taking his deposition and

explained what that would entail, after which Mr. Reed indicated that he would

prefer to have his deposition taken in Harrisburg, Pennsylvania, near his home.

(5/5/16 Hr'g Tr. at 8:14- 9:14.)  According to Mr. Pendleton, he and Ms. Trimarco

also told Mr. Reed that they would be interested in meeting with him to prepare

him for his deposition, to which Mr. Reed agreed; Mr. Reed also agreed to appear

voluntarily for the deposition, instead of under subpoena.  (5/5/16 Hr'g Tr. at 9:15-

10:4.)  Mr. Pendleton stated that, shortly after the call, he sent an email to Mr. Reed

10

confirming the conversation, which intended to cover what they had discussed to the best of Mr. Pendleton's recollection (5/5/16 Hr'g Tr. at 10:11-20); that email did not reference any instruction not to speak with Smart's counsel, nor did it refer to the possibility of a deposition prep session with Benecard's counsel (see 4/13/16 Pendleton Decl., Ex. A). In response to the Court's inquiry, Mr. Pendleton testified that he remembered quite clearly that Mr. Reed did not inquire as to whether he should talk to Smart, and the issue of whether Benecard's counsel wanted him to not talk to Smart did not arise. (5/5/16 Hr'g Tr. at 10:21-11:12.) Mr. Pendleton further testified that he would never have instructed Mr. Reed not to talk to Smart's counsel, and that during the time of the call with Mr. Reed, he clearly remembered and understood the December 8 Order directing Benecard or its counsel not to do so. (5/5/16 Hr'g Tr. at 12:14-13:6.) Mr. Pendleton also stated that Mr. Reed testified to a number of facts at his deposition (collateral to the issues raised in this motion but relevant to Mr. Reed's overall reliability and credibility) that Benecard asserts were inaccurate. (5/5/16 Hr'g Tr. at 14:3-15:6, 16:5-16:16.)[7] Mr. Pendleton testified that he viewed Mr. Reed as the classic witness who tells the questioner what he thinks the questioner wants to hear, an observation that Mr. Pendleton said other Benecard employees who worked with Mr. Reed had confirmed. (5/5/16 Hr'g Tr. at 17:18-18:20.)

---

[7] One purported inconsistency that Mr. Pendleton pointed out was Mr. Reed's deposition testimony relating to the circumstances of his departure from Benecard. (See 5/5/16 Hr'g Tr. at 14:9-25.) Benecard subsequently submitted a copy of Mr. Reed's email that Mr. Pendleton referenced in relation to that issue. (ECF No. 101.) The Court did not find the email to support Mr. Pendleton's claim that Mr. Reed's testimony was unreliable.

Following Mr. Pendleton's testimony, Ms. Trimarco returned to the courtroom, and testified under oath as follows.  Ms. Trimarco stated that she and Mr. Pendleton participated in a short phone call with Mr. Reed on January 28, 2016.  (5/5/16 Hr'g Tr. at 20:21-21:2.)  She testified that Mr. Pendleton began the call by introducing himself, providing some background on the case, stating that Smart wanted to depose him, and asking if Mr. Reed would be willing to be deposed voluntarily and if he would be willing to speak with Benecard ahead of time.  (5/5/16 Hr'g Tr. at 21:3-16.)  Ms. Trimarco testified that neither she nor Mr. Pendleton would have instructed Mr. Reed not to speak with Smart, even if the Court's December 8 Order had not been in place.  (5/5/16 Hr'g Tr. at 21:17-23.)  Ms. Trimarco explained that—although the conversation did not reach this point with Mr. Reed—she and Mr. Pendleton had a regular practice of telling former Benecard employees that they were not their attorneys but that that status could change if the former employee decided to cooperate with Benecard; it was also their regular practice to instruct former employees that they did not need to speak to either party.  (5/5/16 Hr'g Tr. at 21:23-22:11.)  Ms. Trimarco testified that Mr. Reed was cooperative during the call and said that he would be willing to meet with Benecard's counsel for a prep session, but Ms. Trimarco was not able to successfully reach him thereafter.  (5/5/16 Hr'g Tr. at 23:6-11.)  Ms. Trimarco testified that Mr. Reed never asked what he should do if Smart contacted him (or anything along those lines) and that they did not know that he had already talked to Smart until after the call.  (5/5/16 Hr'g Tr. at 23:17-24:4.)  Ms. Trimarco stated that it was also

her and Mr. Pendleton's regular practice to tell former Benecard employees that they could speak with Smart (except to the extent they were preparing the former employee for a deposition where the discussion might be subject to the attorney-client privilege).  (5/5/16 Hr'g Tr. at 24:24-25:13.)  In response to a question from the Court, Ms. Trimarco also testified at the conclusion of her testimony that she had spoken directly with Mr. Pendleton about the January 28 Call in preparation for the Court's hearing.  (5/5/16 Hr'g Tr. at 25:14-25:23.)

On May 11, 2016, the Court issued an Order explaining that, after re-reviewing the video recording of Mr. Reed's deposition, the Court determined that it needed to hear directly from Mr. Reed as to his recollection of the January 28 Call.  (ECF No. 102.)  The Court determined that further testimony from Mr. Reed was necessary because, in contrast to Mr. Pendleton's representations, an extensive review of the video recording showed that Mr. Reed was careful to say what he knew and did not know on various topics, and the video did not support a view that he was biased toward or against one party or another.  After the parties jointly engaged Mr. Reed to secure his availability (see ECF Nos. 111, 115), the Court scheduled a second evidentiary hearing for the purpose of taking Mr. Reed's live testimony (ECF No. 117).

D.   June 1, 2016 Evidentiary Hearing

On June 1, 2016, the Court took sworn testimony from Mr. Reed by live video conference. (Kras Decl., Ex. C ("6/1/16 Hr'g Tr."), ECF No. 135-3.)[8]  Mr. Reed had not been informed of the topic of the hearing in advance.  His testimony was entirely consistent with his deposition and his demeanor was highly credible.  Mr. Reed testified that he had first received a call from Smart's counsel, but could not remember from whom specifically.  (6/1/16 Hr'g Tr. at 9:25-10:3.)[9]  Mr. Reed testified that on that call, which lasted less than ten minutes, Smart's counsel explained that there were proceedings going to court with Benecard and asked if he would be willing to testify and what he did and knew in relation to the events underlying the parties' dispute.  (6/1/16 Hr'g Tr. at 11:3-11:16.)  Mr. Reed testified that he recalled being asked about his job duties at Benecard and how he knew the parties, but did not recall whether he had been asked if he would be willing to talk to Smart again about the details of his work.  (6/1/16 Hr'g Tr. at 34:24-35:12.)

Mr. Reed further testified that he later received a call—lasting approximately ten minutes and occurring around January 2016—from Benecard's counsel, who said they understood that he had offered to testify and said that they were going to have him come to Benecard's Mechanicsburg office along with some of the other people involved to go over testimony.  (6/1/16 Hr'g Tr. at 12:12-13:7, 16:1-4.)  Mr.

---

[8] The Court proceeded by video conference instead of by in-person testimony based on Mr. Reed's preference and in light of the fact that he was located in Pennsylvania.  Counsel for both Smart and Benecard were present on-site with Mr. Reed and had an opportunity to cross-examine him.

[9] Mr. Reed later testified that a Smart employee, John Kloss, had told him in advance that a Smart lawyer would contact him.  (6/1/16 Hr'g Tr. at 22:4-12.)  He also testified that he told Benecard's lawyers during the January 28 Call that he had previously been contacted by the other side.  (6/1/16 Hr'g Tr. at 28:11-19.)

Reed testified that Benecard's counsel said that someone would follow up with him to set up the logistics for the meeting.  (6/1/16 Hr'g Tr. at 14:12-16.)  Mr. Reed further testified that Benecard's counsel—whom Mr. Reed identified as having a male voice—told him not to talk to anybody else or to Smart's lawyers.  (6/1/16 Hr'g Tr. at 14:18-15:1.)  Specifically, Mr. Reed testified that on the January 28 Call the male voice said "don't talk to anybody else, don't talk to Smart's lawyers, to . . . something to that extent."  (6/1/16 Hr'g Tr. at 14:19-21.)  When probed by the Court further, Mr. Reed testified that his best recollection was that Benecard's counsel essentially said "we're going to have a follow-up at an office in Mechanicsburg to speak with you about your testimony, and we don't want you talking to Smart's lawyers to share any information with them."  (6/1/16 Hr'g Tr. at 15:6-11.)  Mr. Reed testified that he felt a little uncomfortable with the phone call and therefore never returned any calls from the person who subsequently left several voicemails to schedule a meeting at Benecard's office.  (6/1/16 Hr'g Tr. at 16:6-14.)  Mr. Reed testified that, even if Benecard's counsel had not made that phone call, he probably would not have met with either side's counsel.  (6/1/16 Hr'g Tr. at 17:15-18:2, 32:24-33:11.)  Mr. Reed testified that the only other communication he had with Benecard's counsel was in relation to setting up his deposition (6/1/16 Hr'g Tr. at 18:3-9), and he did not recall having any other subsequent phone conversation with Smart's counsel (6/1/16 Hr'g Tr. at 33:16-22).  Mr. Hans did very little cross-examination of Mr. Reed—and never sought to undermine this testimony.  Nor did he attempt to show that Mr. Reed was biased in some way.

On May 31, 2016, just prior to the June 1 hearing, Benecard had filed a letter requesting the opportunity to submit additional briefing addressed to Mr. Reed's testimony (ECF No. 122); the Court granted that request (ECF No. 125).  Smart submitted a supplemental brief on June 9, 2016 (ECF No. 134); Benecard submitted a responsive supplemental brief on June 15, 2016 (ECF No. 141).

## II.    LEGAL STANDARDS

### A.    Inherent Powers Pursuant to a Contempt Finding

A court possesses the inherent power to punish for contempt of its orders. Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).  The purpose of the contempt power is "to enforce compliance with an order of the court or to compensate for losses or damages."  Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981).  The contempt power "reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not merely the disruption of court proceedings[; r]ather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."  Chambers, 501 U.S. at 44 (quotation marks and alterations omitted).

Because of the potency of the Court's inherent powers, the court must exercise such powers with "restraint and discretion."  Id.; see DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998) (stating that the Second Circuit has "required a finding of bad faith for the imposition of sanctions under the inherent power doctrine").  "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is

clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and

(3) the contemnor has not diligently attempted to comply in a reasonable manner.'"

<u>Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.</u>, 369

F.3d 645, 655 (2d Cir. 2004) (quoting <u>King v. Allied Vision, Ltd.</u>, 65 F.3d 1051, 1058

(2d Cir. 1995)).  "It need not be established that the violation was willful." <u>Id.</u>

      B.   <u>Rule 37 Sanctions</u>

      Federal Rule of Civil Procedure 37 provides that "[i]f a party . . . fails to obey

an order to provide or permit discovery, including an order under Rule 26(f), 35, or

37(a), the court where the action is pending may issue further just orders." Fed. R.

Civ. P. 37(b)(2)(A).  The Rule goes on to provide seven enumerated (but not

exhaustive) penalties for non-compliance with a discovery order, including treating

as "contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A)(vii).

"The Court has wide discretion to impose Rule 37 sanctions against a party . . . for

failure to comply with a discovery order." <u>In re 650 Fifth Ave. & Related Properties</u>,

No. 08 Civ. 10934 (KBF), 2013 WL 4774720, at *6 (S.D.N.Y. Sept. 4, 2013) (citing

<u>Shcherbakovskiy v. Da Cano Al Fine, Ltd.</u>, 490 F.3d 130, 135 (2d Cir. 2007)).

      "In reviewing the propriety of [Rule 37] sanctions, the Second Circuit looks at

four non-exhaustive factors, including '(1) the willfulness of the non-compliant party

or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration

of the period of noncompliance, and (4) whether the non-compliant party had been

warned of the consequences of noncompliance.'" <u>Id.</u> (quoting <u>S. New England Tel.</u>

<u>Co. v. Global NAPs Inc.</u> ("<u>SNET</u>"), 624 F.3d 123, 144 (2d Cir. 2010)).  Not all of these

factors need be resolved against the party challenging the sanctions for such sanctions to be within a district court's discretion.  <u>Id.</u>

III.    DISCUSSION

Smart's motion seeks a finding that Benecard's conduct constituted civil contempt of the Court's December 8 Order and an award of sanctions and other appropriate relief pursuant to the Court's inherent powers and Rule 37.  The remedies that Smart seeks include the monetary costs it has incurred as a result of Benecard's contempt (including, <u>inter alia</u>, the costs of serving Mr. Reed with a subpoena and of bringing the instant motion), as well as an evidentiary sanction to be determined at a later date.  Smart also seeks a further Order from the Court clarifying the right of former Benecard employees to speak to Smart without fear of repercussions from Benecard.

In response, Benecard has, at various points, argued, <u>inter alia</u>, that neither Mr. Pendleton nor Ms. Trimarco in fact violated the December 8 Order because they did not instruct Mr. Reed to not talk to Smart's counsel (and that there is at least no clear and convincing evidence that they did) and that Smart has not, in any event, suffered any loss or harm because Smart did not attempt to further interview Mr. Reed before his deposition and did have the opportunity to depose Mr. Reed and obtain helpful testimony.  In its supplemental brief following Mr. Reed's testimony at the June 1 hearing, Benecard also argued that, even if counsel actually gave the alleged instruction to not speak to Smart or its counsel, that instruction did not, in context, violate the Court's December 8 Order because the evidence shows that the

January 28 Call operated in the aura of the attorney-client privilege.[10]  Benecard also contends that it and its employees have not been accused of any wrongdoing and should not be penalized for any misconduct engaged in by its outside counsel.

Having considered the parties' arguments and the evidentiary record on this motion, and based on the Court's factual findings set forth below, the Court concludes that Mr. Pendleton engaged in contemptuous behavior by violating the clear and unambiguous language of the December 8 Order by instructing Mr. Reed during the January 28 Call to not speak with Smart's counsel, and that Ms. Trimarco was complicit in that misconduct.  This determination alone justifies the imposition of some sanction pursuant to the Court's inherent powers.  Their violation is, moreover, further compounded by the Court's finding that both Mr. Pendleton and Ms. Trimarco gave false testimony under oath when they stated, at the May 5, 2016 hearing, that Mr. Pendleton never told Mr. Reed to not speak with Smart or its counsel.  This additional misconduct represents a severe lack of judgment and is an additional basis for the sanctions that the Court imposes below.

Notwithstanding the foregoing, and as explained further below, the Court does not find that Benecard has itself engaged or been complicit in any misconduct. Nor has Smart actually shown that it has suffered any prejudice due to counsel's violation of the December 8 Order.  Accordingly, the Court concludes that there is no need to impose additional sanctions against Benecard itself pursuant to Rule 37,

---

[10] As explained below, this argument was a new one and was wholly unsupported by the factual record.

and there is no need to issue a new order clarifying Smart's right to conduct informal discovery of former Benecard employees under the circumstances.

### A.   Contempt

In order to hold Benecard (and/or its counsel) in civil contempt, the Court must find (1) that the December 8 Order is clear and unambiguous, (2) that Benecard (and/or its counsel) did not comply with that order under a clear and convincing standard, and (3) Benecard (and/or its counsel) did not diligently attempt to comply with the December 8 Order in a reasonable manner.  The Court finds that each of these conditions are met with respect to Mr. Pendleton.  Counsel's contempt is severely compounded, moreover, by the Court's finding that Mr. Pendleton and Ms. Trimarco intentionally misled the Court under oath in the sworn testimony they gave at the May 5, 2016 hearing (as well as in their sworn declarations submitted in opposition to the pending motion).  After explaining these findings, the Court will then address the issue of an appropriate remedy.

#### 1.   Clarity of the December 8 Order

There is no dispute that the December 8 Order was clear and unambiguous with respect to whether Benecard's counsel could instruct former Benecard employees not to talk to Smart or its counsel.  The December 8 Order confirmed that Smart could "proceed with its informal discovery of former [Benecard] employees" outside the presence of Benecard's counsel, and could "conduct interviews and seek documents from former Benecard employees to the extent that Smart complies with those individuals' confidentiality obligations."  (ECF No. 60.)  The December 8 Order also ordered that Benecard "cease further attempts at

interference with Smart's interviews" and required Benecard to send a corrective letter to each individual that it had already contacted and instructed not to speak to Smart's counsel.  (ECF No. 60.)  The plain language of the December 8 Order clearly and unambiguously directed that Benecard not undertake any efforts to restrict or discourage former employees from speaking with Smart.  Benecard does not dispute that the December 8 Order would clearly be violated by an instruction from a representative of Benecard or its counsel to a former Benecard employee to not talk to Smart or its counsel.  Mr. Pendleton testified that he clearly understood—and remembered—the Court's instruction to cease interfering with Smart's efforts to interview former employees.  (5/5/16 Hr'g Tr. at 12:14-13:6.)

### 2.   Non-Compliance with the December 8 Order

Based on the whole record before the Court on this motion, including the parties' written declarations, Mr. Reed's deposition, and the live testimony offered at the May 5, 2016 and June 1, 2016 evidentiary hearings, the Court finds by clear and convincing evidence that Mr. Pendleton affirmatively did not comply with the December 8 Order and that Ms. Trimarco was at least complicit in that violation. The circumstance of that violation was a telephone conversation between Mr. Pendleton, Ms. Trimarco and Mr. Reed that took place on January 28, 2016.[11]  At the June 1 hearing, Mr. Reed credibly and without equivocation testified that during the January 28 Call with Benecard's counsel, a person with a "male voice" essentially said "don't talk to anybody else, don't talk to Smart's lawyers" and "we

---

[11] Although Mr. Reed did not recall the names of the individuals who called him, there is no dispute that Mr. Pendleton and Ms. Trimarco (and no one else) participated on behalf of Benecard.  (E.g., 4/13/16 Pendleton Decl. ¶¶ 6-7; 4/13/16 Trimarco Decl. ¶ 4.)

don't want you talking to Smart's lawyers to share any information with them."
(6/1/16 Hr'g Tr. at 14:18-15:12.)  Mr. Reed confirmed that Smart was specifically
referenced by name in the conversation.  (6/1/16 Hr'g Tr. at 15:13-24.)  This was
entirely consistent with Mr. Reed's testimony at his deposition that on the call
Benecard's counsel told him to "not talk to anybody at Smart or their legal counsel"
(Reed Dep. Tr. at 11:20-25), which went unchallenged by Mr. Pendleton on cross-
examination at the deposition and by Mr. Hans at the June 1 evidentiary hearing
before the Court.  Mr. Reed remained consistent despite being probed on the issue
from multiple angles and, based on the Court's observation, he was a credible and
trustworthy witness.  As this Court stated after reviewing the video recording of
Mr. Reed's deposition testimony (see ECF No. 102), at no point did Mr. Reed appear
to be a "yes man" or biased in favor of either Smart or Benecard.  His answers were
measured and deliberate.

Benecard's efforts to cast doubt on Mr. Reed's testimony—and undermine a
finding that counsel said what Mr. Reed claims—are two-fold.  Benecard relies, on
the one hand, on the declarations and testimony of Mr. Pendleton and Ms.
Trimarco, in which they provide accounts of the January 28 Call that directly
contradict (and are irreconcilable with) Mr. Reed's recollection.  On the other hand,
Benecard attempts to paint Mr. Reed as an unreliable witness based on purported
inaccuracies in the testimony he gave on other topics at his deposition and the June
1 hearing.  Neither tactic is sufficient to undermine the Court's finding that Mr.

Pendleton said what Mr. Reed claims he said, thereby violating the December 8 Order.

First, as to the purported inconsistencies in Mr. Reed's testimony, which relate to, inter alia, dates and names and events that occurred several years ago while he was employed at Benecard (see, e.g., Benecard's Supp. Mem. of Law at 6-7), the Court finds these issues entirely collateral to the testimony that is at the core of this motion (i.e. the content of the January 28 Call), and insufficient to undermine Mr. Reed's overall reliability as a witness. In contrast to certain of these other issues, Mr. Reed's testimony relating to the January 28 Call did not reflect a hint of a fading memory on that topic. He volunteered details of what took place during the January 28 Call that confirmed the strength of his recollection. As to the other points that Benecard cites, Mr. Reed did not suggest that his recollection was as strong.

Second, based on the Court's credibility assessments of the three participants to the January 28 Call—Mr. Reed, Mr. Pendleton, and Ms. Trimarco—the Court credits Mr. Reed's testimony over that of Mr. Pendleton and Ms. Trimarco. His testimony was more reliable and credible. This finding rests on the Court's assessment of demeanor and several additional data points. As stated above, Mr. Reed presented as a reliable and credible witness during his live testimony at the June 1 hearing; the Court felt similarly in relation to Mr. Reed's deposition testimony, with respect to which the Court carefully reviewed the video recording. Moreover, except for the specific issues that are the subject of the pending motion

(and which the Court ensured that Mr. Reed had no reason to know were of central importance here), Mr. Reed's recollection of the January 28 Call is actually corroborated by the accounts provided by Mr. Pendleton and Ms. Trimarco. Additionally, in contrast to Mr. Pendleton and Ms. Trimarco, who, as to the question of whether they instructed Mr. Reed to not speak with Smart's counsel, may have been motivated by a desire to avoid sanctions (in their personal capacities or against Benecard), the Court has discerned no reason why Mr. Reed would falsely claim that Benecard's counsel told him not to talk to Smart.[12]

The Court also finds Mr. Reed's testimony to be credible because his conduct subsequent to the call—ignoring communications he received from both sides except to confirm that he would attend his deposition—is consistent with Mr. Reed's statement that the call from Benecard made him uncomfortable, and that conduct was corroborated by the testimony of all parties. In contrast, Mr. Reed's subsequent conduct is inconsistent with Mr. Pendleton's and Ms. Trimarco's recollection of the January 28 Call. Their testimony that the conversation was friendly and pleasant and did not include an instruction not to talk to Smart or its counsel is hard to reconcile with Mr. Reed's decision to not respond to Benecard's follow-up inquiries after the January 28 Call. Mr. Pendleton's credibility is also undermined by his testimony that, at the deposition, Mr. Reed was the sort of witness who wanted to please the examiner by giving the answer that he thinks the examiner wants to

---

[12] Mr. Reed similarly had no reason to falsely testify that he told Benecard's counsel that he had previously been in contact with Smart, the second fact as to which Mr. Reed's testimony differs from that of Mr. Pendleton and Ms. Trimarco. It is conceivable that Mr. Pendleton and Ms. Trimarco omitted this additional detail in their testimony in order to allay suspicion that they would have followed up by telling Mr. Reed to cease further communication with Smart's counsel.

hear (5/5/16 Hr'g Tr. at 17:21-18:1); based on the Court's own review of the video recording of Mr. Reed's deposition, Mr. Pendleton's representation was at the very least an exaggeration that undermines Mr. Pendleton's other testimony.  As to Ms. Trimarco, the Court found her to be less confident and comfortable with her recollection in her live testimony.

Finally, in addition to these discrepancies in Mr. Pendleton's and Ms. Trimarco's testimony (and others that the Court need not exhaustively detail here), the Court is also troubled by the fact that Mr. Pendleton and Ms. Trimarco conferred about their recollections of the contents of the January 28 Call in preparation for their testimony at the May 5 hearing.  (See 5/5/16 Hr'g Tr. at 25:14-25:23.)  It should have been clear to Mr. Pendleton and Ms. Trimarco that their credibility would be a central issue at the hearing, and that coordination just prior to their testimony would serve to undermine the Court's ability to test the independent recollections of each witness.  The fact that they did so—and the unusually high degree of similarity between their testimonies—further undermines their credibility.

In light of the Court's conclusion that Mr. Reed testified truthfully and accurately about the contents of the January 28 Call, it logically follows that Mr. Pendleton not only knowingly and intentionally violated the December 8 Order (and that Ms. Trimarco was complicit in that violation), but also that Mr. Pendleton and Ms. Trimarco intentionally misled the Court by providing false testimony at the May 5 hearing.  Neither Mr. Pendleton nor Ms. Trimarco offered any middle

ground; each asserted that his or her recollection was strong and each categorically denied saying anything that could be remotely confused with what Mr. Reed claimed was said on the January 28 Call.  The Court finds that Mr. Pendleton and Ms. Trimarco did knowingly provide false testimony, thereby violating, inter alia, New York Rule of Professional Conduct 3.3(a)(1), which "prohibits a lawyer from knowingly making a false statement of fact to a tribunal or failing to correct a false statement of material fact previously made to the tribunal by the lawyer."  In re Gordon, 780 F.3d 156, 157 (2d Cir. 2015) (quotation marks and alterations omitted); see also N.Y. RPC Rule 3.3(a)(1).  Mr. Pendleton and Ms. Trimarco also violated New York Rule of Professional Conduct 8.4(c), which prohibits attorneys from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation."  In re Gilly, 976 F. Supp. 2d 471, 479 & n.4 (S.D.N.Y. 2013); see also N.Y. RPC Rule 8.4(c).

Although making a finding that an attorney has intentionally misled the Court is among the most distasteful tasks that a court has to undertake, the Court has no choice but to make such a finding here.  It is all the more difficult here because Mr. Pendleton, in his role as lead counsel for Benecard, has otherwise conducted himself in a professional manner and the Court has valued having Mr. Pendleton appear before it.  The misconduct which the Court has found Mr. Pendleton to have engaged in is, quite frankly, hard to reconcile with the remainder of his representation in this action.  Nonetheless, the Court is convinced that this misconduct occurred, even if it was only a one-time mistake.  This error in Mr.

Pendleton's and Ms. Trimarco's judgment severely compounds the violation of the December 8 Order, and provides a significant basis for the Court's determination of an appropriate sanction as set forth below.

    3. <u>Diligence in Attempting to Comply with the December 8 Order</u>

  The final prong necessary to make a civil contempt finding is that the contemnor did not diligently attempt to comply with a court order in a reasonable manner.  Based on the Court's findings set forth above and the circumstances of Benecard's counsel's violation of the December 8 Order, this prong is easily satisfied.  Benecard has proffered no testimony that counsel made an honest mistake in instructing Mr. Reed not to talk to Smart's counsel; rather, its counsel has affirmatively asserted that they clearly understood the December 8 Order and recognize that it would have been improper to instruct Mr. Reed to not talk to Smart or its counsel.  Benecard does raise one argument in its recent submissions to the effect that counsel would have been justified in telling Mr. Reed not to talk to Smart or its counsel to protect communications subject to the attorney-client privilege.  On the record presented before the Court, however, this argument is both frivolous and highly troubling.  There is absolutely no support in the record for the view that the January 28 Call operated in even the shadow of the attorney-client privilege.  First, Benecard claimed no privilege at Mr. Reed's deposition when Smart questioned Mr. Reed about his communications with Benecard's counsel. Second, Mr. Pendleton and Ms. Trimarco have been unequivocal in both their declarations and their live testimony that they simply did not tell Mr. Reed not to talk to Smart's counsel and that no attorney-client relationship was formed, as the

conversation did not even reach the preliminary stages of a discussion of privilege. (5/5/16 Hr'g Tr. at 12:14-13:6, 21:23-25:13.)  No witness has advanced a version of events in which Benecard's counsel could have defensibly instructed Mr. Reed to not talk to Smart's counsel in a manner that would be consistent with the December 8 Order.  The fact that Benecard's counsel would even make this assertion—which essentially tries to obfuscate the fact that counsel directly violated a court order and then lied about it—without any factual basis itself raises serious concerns.

### 4.   Remedy

Having determined that Mr. Pendleton should be held in civil contempt for directly and intentionally violating the December 8 Order, that Ms. Trimarco was complicit in that violation, and that each intentionally misled the Court in their sworn testimony at the May 5 hearing, the remaining question is what should flow from those findings.  The Court concludes that these findings warrant monetary and certain other sanctions against counsel pursuant to the Court's inherent powers.[13]

Pursuant to the Court's responsibility for the supervision of attorneys appearing before it, the Court has "the inherent power to impose monetary sanctions against members of its Bar for misconduct." Tedesco v. Mishkin, 629 F. Supp. 1474, 1485 (S.D.N.Y. 1986); see also Chambers, 501 U.S. at 45 ("[A] court may assess attorney's fees as a sanction for the willful disobedience of a court

---

[13] The Court notes that Smart also seeks sanctions against Benecard pursuant to Fed. R. Civ. P. 37 and a further order from the Court that, inter alia, directs Benecard not to interfere with Smart's informal discovery of former Benecard employees.  The Court fashions a remedy at this juncture before discussing Rule 37 because, as explained below, the Court declines to award any further relief beyond that which it is granting pursuant to its inherent powers.

order." (quotation marks omitted)).  Although a contempt finding has been made here, monetary sanctions may be awarded against an attorney even without a prior finding of contempt.  <u>Tedesco</u>, 629 F. Supp. at 1485.  A court may also impose other, non-monetary sanctions against attorneys appearing before it for misconduct, including where based on a finding of lack of candor to the court.  <u>See</u>, <u>e.g.</u>, <u>In re Gordon</u>, 780 F.3d at 161.  Examples of such sanctions include, <u>inter alia</u>, a public reprimand, suspension from practice, and disbarment.  <u>See In re Gordon</u>, 780 F.3d at 161 (imposing two month suspension for violations of ethical rules, including duty of candor); <u>Peters v. Comm. on Grievances for U.S. Dist. Court for S. Dist. of New York</u>, 748 F.3d 456, 463 (2d Cir. 2014) (affirming seven year suspension); <u>In re Saghir</u>, No. M-2-238, 2010 WL 308722, at *1 (S.D.N.Y. Jan. 22, 2010) (disbarment).  A court even has the discretion to dismiss a lawsuit as a sanction for attorney misconduct.  <u>See Chambers</u>, 501 U.S. at 44-45.  Fashioning an appropriate remedy in a particular case "requires a fact-particular inquiry and is not amenable to a rigid calculus based on other cases."  <u>Peters</u>, 748 F.3d at 463; <u>see also Fund of Funds, Ltd. v. Arthur Andersen & Co.</u>, 567 F.2d 225, 227 (2d Cir. 1977).

Here, the Court finds that monetary sanctions, an award of costs and attorneys' fees, and a referral to the Grievance Committee of the Southern District of New York, constitute the appropriate sanctions for the misconduct described above.[14]  The Court's reasons for imposing these particular sanctions are as follows.

---

[14] The Court also strongly considered disqualifying Mr. Pendleton from this case as a sanction for his misconduct.  Although the Court believes it possesses the authority to do so, <u>see</u> <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005); <u>Bowens v. Atl. Maint. Corp.</u>, 546 F. Supp. 2d 55, 85-88 (E.D.N.Y. 2008), the Court decided against imposing such a sanction because

The reasons for imposing monetary sanctions are self-evident—such sanctions serve as a deterrent for non-compliance with the Court's orders and compensate for the substantial resources expended due to counsel's violation of the December 8 Order and intentional misrepresentations to the Court.  The Court concludes that based on their respective violations, it is appropriate to impose a monetary fine on Mr. Pendleton of $10,000, to be paid to the Court's registry, and to impose on Ms. Trimarco, who is a more junior lawyer and who did not herself actually instruct Mr. Reed to not speak with Smart or its counsel (but who nonetheless intentionally lied to the Court), a monetary fine of $1,500, to be paid to the Court's registry.

The Court also grants Smart an award of reasonable costs and attorneys' fees incurred as a result of counsel's misconduct to make Smart whole.  These costs shall be borne by DLA Piper LLP (US), the law firm representing Benecard in this action and of which Mr. Pendleton is a partner.  These costs and fees include those that Smart incurred, <u>inter alia</u>, in attempting to communicate with Mr. Reed after the January 28 Call, serving the subpoena, and in relation to the pending motion and all related filings and court appearances.  Smart shall detail such costs and provide them to Mr. Pendleton's firm; they shall attempt to agree on payment.  If they are unable to do so, they may seek Court assistance.

---

this would have caused a substantial delay to the trial schedule to allow Benecard to retain new counsel and would have significantly prejudiced Benecard, which has not itself engaged in any misconduct.

In light of Mr. Pendleton's and Ms. Trimarco's violations of the Rules of Professional Conduct, the Court shall also refer both attorneys to the Grievance Committee of the Southern District of New York for its consideration.

B.   Rule 37

In addition to seeking a civil contempt finding and that the Court impose sanctions pursuant to its inherent powers, Smart also seeks sanctions against Benecard pursuant to Rule 37.  Having held Mr. Pendleton in civil contempt and imposing sanctions against him and Ms. Trimarco (the individuals directly responsible for the misconduct) pursuant to the Court's inherent powers, the Court declines to impose any additional sanctions against Benecard or its counsel pursuant to Rule 37.  The Court exercises its discretion not to do so for several reasons.

First, the Court concludes that Smart has been sufficiently made whole for Benecard's counsel's violation by the remedies already imposed pursuant to the Court's inherent powers.  Second, as discussed above, there has been no allegation (and there is no evidentiary basis in the record to find) that Benecard or any of its employees have engaged or been complicit in any attempt to violate the December 8 Order or intentionally mislead the Court in any way.  Third, the Court finds that Smart has not actually suffered any prejudice as a result of the violation of the December 8 Order.  Based on Mr. Reed's testimony at the June 1 hearing, the Court is not convinced that Mr. Reed would have responded any differently if Smart's counsel approached him seeking an informal interview or participation in a deposition prep session.  Mr. Reed was quite clear that he did not feel it was

31

appropriate to participate in a prep session prior to his deposition with either side and that he had decided to stay neutral in the parties' dispute, even before the January 28 Call.  (6/1/16 Hr'g Tr. at 16:23-18:2, 32:25-33:11.)[15]  It is, furthermore, wholly speculative to believe that Mr. Reed, who Smart contends provided helpful testimony (see 4/6/16 Barnowski Decl. ¶ 21), would have said anything at his deposition more helpful or insightful if the January 28 Call had not taken place. The Court's review of Mr. Reed's deposition shows that Smart had a full and fair opportunity to examine him.  In light of these determinations, the Court does not believe that any additional evidentiary or monetary sanction against Benecard or its counsel is warranted.  The Court therefore denies Smart's motion to the extent it seeks additional sanctions pursuant to Rule 37.

C.    Request for a Further Order Prohibiting Benecard's Interference

Smart also asks this Court to issue a further order prohibiting Benecard's interference in Smart's informal discovery efforts with former Benecard employees, and reaffirming Smart's right to talk to those individuals.  A further order is unnecessary in light of the clarity of the December 8 Order, which will continue to remain in full force through the duration of this litigation (including during trial preparation).  Based on the progression of these proceedings, the Court has full faith that Benecard and its counsel will steer clear of violating the December 8 Order.  The Court therefore denies Smart's motion to the extent that it seeks an

---

[15] Mr. Reed's statement that he wished to remain neutral makes Benecard's counsel's decision to instruct Mr. Reed to not talk to Smart or its counsel all the more tragic.  There was no need for Mr. Pendleton and Ms. Trimarco to go down the path of violating the December 8 Order and engaging in the misconduct that followed.

additional order confirming that it may conduct informal discovery of Benecard's former employees and that Benecard may not interfere with those efforts.[16]

## IV.    CONCLUSION

For the reasons set forth above, Smart's motion is GRANTED IN PART.  The Court hereby imposes the following sanctions as a result of Mr. Pendleton's civil contempt of this Court's December 8 Order and Mr. Pendleton's and Ms. Trimarco's intentional misrepresentations to the Court in sworn testimony: (1) Mr. Pendleton shall pay a fine of $10,000, to be paid to the Court's registry; (2) Ms. Trimarco shall pay a fine of $1,500, to be paid to the Court's registry; (3) Mr. Pendleton's law firm, DLA Piper LLP (US), shall pay Smart's reasonable costs and attorney's fees incurred as a result of counsel's misconduct and Smart's motion; and (4) the Court shall refer this matter to the Grievance Committee of the Southern District of New York.

The Clerk of Court is directed to close the motion at ECF No. 77.

SO ORDERED.

Dated:        New York, New York
                   June 29, 2016

_____
        KATHERINE B. FORREST
        United States District Judge

---

[16] Smart may renew its application for a further order on this issue to the extent that any future developments arise suggesting such a need.