# Exhibit 7

Page 1

```
 1
 2                UNITED STATES DISTRICT COURT
 3                SOUTHERN DIVISION OF NEW YORK
 4       _____
 5       SMART INSURANCE COMPANY,   ) Case No.
 6       Plaintiff,                 ) 1:15-cv-04384 (KBF)
 7       vs.                        )
 8       BENECARD SERVICES, INC.,   )
 9       Defendant.                 )
10       _____
11
12            Videotaped Deposition of GERARD MULCAHY
13                      Baltimore, Maryland
14                        June 29, 2016
15                          9:50 a.m.
16
17
18
19
20
21       Reported by:  Bonnie L. Russo
22
```

Page 122

1      BY MR. PENDLETON:
2   Q.  The -- how did you know that Smart
3  had hired Babette Edgar as a consultant?
4   A.  I believe that they reported it to
5  us in one of their work plans.
6   Q.  And do you see that Stephanie is
7  writing to John Gardynik about a conversation
8  that Babette had recently had with Trish Axt?
9  Do you see that?
10      MR. BARNOWSKI: Object to form.
11      THE WITNESS: I do see that.
12      BY MR. PENDLETON:
13   Q.  Okay.  And there are a list of
14  things that Stephanie suggests to Mr. Gardynik
15  might help him prepare for his upcoming
16  meeting, correct?
17      MR. BARNOWSKI: Object to form.
18      MR. YU:  Objection.
19      MR. BARNOWSKI: Mischaracterizes the
20  document as well.
21      MR. YU:  I mean the -- objection.
22  The witness is not here -- I don't -- I don't

Page 123

1  -- I don't believe it's fair for -- to ask
2  Mr. Mulcahy to opine on what Ms. -- Ms. Bayer
3  meant or didn't mean in writing this e-mail.
4      MR. PENDLETON: Well, I -- yeah.  I
5  wasn't asking him that.  Let me ask another
6  question.
7      BY MR. PENDLETON:
8   Q.  Do you see on No. 6?
9   A.  I do see No. 6.
10   Q.  Did you or Trish Axt ever
11  communicate to Smart or its consultants that
12  Smart the insurance company did not understand
13  how rigorous the oversight of its PBM had to be
14  and that it was not fully staffed for it?
15      MR. BARNOWSKI: Object to form.
16      THE WITNESS: I don't specifically
17  recall.
18      BY MR. PENDLETON:
19   Q.  Okay.  Do you recall the work plan
20  request we went over, your formal letter dated
21  May 17, 2013?
22   A.  I do.

Page 124

1   Q.  And do you recall that one of the
2  issues was the -- the -- the sufficiency of
3  resources, including full-time clinical
4  pharmacists?
5      MR. BARNOWSKI: Object to form.
6      THE WITNESS: I do recall that.
7      BY MR. PENDLETON:
8   Q.  And that Smart had represented it
9  was going hire some additional clinical
10  staffing?
11      MR. BARNOWSKI: Object to form.
12      THE WITNESS: I do recall that.
13      BY MR. PENDLETON:
14   Q.  Did you have any conversations with
15  Smart personnel or ask people that work for you
16  to have conversations with Smart personnel
17  about the necessity to make sure their
18  oversight of the PBM was rigorous in order to
19  ensure compliance with CMS regulations?
20      MR. BARNOWSKI: Object to form.
21      THE WITNESS: I don't recall that,
22  but that's a -- a basic tenet of the

Page 125

1  participation in the program.
2      BY MR. PENDLETON:
3   Q.  By early June 2013, do you recall
4  communicating to Smart or any of its personnel
5  or asking people that work for you to do so
6  that CMS had continuing concerns about the
7  plan's compliance with CMS regulations?
8      MR. BARNOWSKI: Object to form.
9      THE WITNESS: I don't -- I don't
10  recall the specific timing.  But we had
11  continued and ongoing concerns about their
12  compliance throughout the entire time they
13  operated from the audit until the novation.
14      BY MR. PENDLETON:
15   Q.  And after the audit, did the same
16  level of concern that you had prior to the
17  audit continue up until the time of the
18  novation?
19      MR. BARNOWSKI: Object to form.
20      MR. YU:  Hold on.  I'm going to --
21  consistent with the approval, I'm going to ask
22  the witness to focus his answer on what he