```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SMART INSURANCE COMPANY,                                     :
                                                             :
                              Plaintiff,                     :
                                                             :
             -v-                                             :    15-cv-4384 (KBF)
                                                             :
BENECARD SERVICES, INC.,                                     :    OPINION & ORDER
                                                             :
                              Defendant.                     :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 13, 2017

KATHERINE B. FORREST, District Judge:

    This is the final coda regarding the sanctions for civil contempt imposed on counsel for Benecard Services, Inc. ("Benecard"), Brian John Pendleton, Jr. and Gina Trimarco, during their representation of Benecard in this now-settled commercial dispute. By Opinion & Order dated June 29, 2016 (the "June 29 Order"), and following two evidentiary hearings, this Court had imposed sanctions on counsel for violating a court order instructing Benecard and its counsel to, inter alia, "cease further attempts at interference with Smart's interviews" of former Benecard employees. (See ECF No. 156.) The record then before the Court consisted of a number of filings, as well as testimony by Mr. Pendleton and Ms. Trimarco as to their actions in connection with the court order at issue. At that time, the Court viewed the record as presenting clear and convincing evidence of contempt of the December 8 Order as well as perjury. (See id. at 2-3.) Specifically, the Court found that counsel instructed Jeffrey Reed, a former Benecard employee,

not to speak with Smart's counsel.  (See id.)  The Court views the process provided to Mr. Pendleton and Ms. Trimarco prior to the issuance of the June 29 Order as plentiful—there was only one issue then concerning the Court:  counsels' conduct in connection with a court order; they were asked to explain their conduct, and if there were violations found, sanctions would follow.  Moreover, it is of course expected that all attorneys, as officers of the Court, understand that when they submit declarations or are sworn to tell the truth in open court, they must do so, and failure to do so may have serious repercussions, including sanctions.

Following issuance of the June 29 Order, both Mr. Pendleton and Ms. Trimarco sought reconsideration by newly retained personal counsel.  (ECF Nos. 208, 210.)  A flurry of filings ensued.  After a number of filings and judicial endorsements regarding the procedural posture of the matter—and particularly whether Mr. Pendleton and Ms. Trimarco had received appropriate legal notice of the possibility of sanctions—the Court agreed that it would set a schedule for additional briefing and yet another evidentiary proceeding to address the Court's imposition of contempt sanctions and the possibility of imposing sanctions sua sponte under Federal Rule of Civil Procedure 11(c)(3).  (See ECF Nos. 276, 279.)  The Court also authorized the fourth examination of Mr. Reed, the former employee witness whose testimony had raised the contempt issue in the first instance.[1]  (See ECF No. 302.)  By this time, there had been an initial deposition of Mr. Reed in

---

[1] The Court refers the reader to its June 29 Order for a full description of the issue and Mr. Reed's role in it.  (See ECF No. 156.)

2

connection with the litigation, a second deposition specifically addressed to the issue of contempt, a third examination of Mr. Reed in open court, and then finally, the fourth deposition conducted by Mr. Pendleton and Ms. Trimarco's outside counsel.

On December 14, 2016, this Court held the additional evidentiary hearing on the contempt and sanctions issue.  As a result of the evidence adduced at that hearing, the Court determined that it was satisfied that on balance, the newly presented evidence undermined the Court's "clear and convincing" finding.  At the conclusion of that hearing and on the record, the Court vacated the June 29 Order imposing sanctions and declined to impose Rule 11 sanctions sua sponte.  (See Transcript of Proceedings, dated December 14, 2016 ("Hearing Tr.", ECF No. 313) 94:5-9; see also ECF No. 312.)  The Court indicated a written order would follow. (See Hearing Tr. 94:10-95:1.)  This is that order.

The Court's decision to vacate its prior order is based on its assessment of the appropriate standard of proof measured against new evidence presented by Mr. Pendleton and Ms. Trimarco at the December 14 hearing.  Why such evidence was not presented before is unclear—given that the entire contempt issue concerned whether these two individuals had directly violated a court order, both certainly had strong incentives to take the contempt motion seriously and fully develop the record the first time around.  Nevertheless, the Court finds significant—and frankly "game changing"—four declarations by former Benecard employees submitted by Mr. Pendleton in connection with his motion for reconsideration and received in evidence at the hearing.  (See Declaration of Bruce E. Shearer, dated July 25, 2016

3

("Shearer Decl.", ECF No. 216); Declaration of Donna Dyson, dated July 27, 2016 ("Dyson Decl.", ECF No. 217); Declaration of Sandra Wolf, dated July 25, 2016 ("Wolf Decl.", ECF No. 218); Declaration of William F. Wolfe, dated July 20, 2016 ("Wolfe Decl.", ECF No. 219); see also Hearing Tr. 33:25-34:12 (stating that declarations are part of evidentiary record); id. 34:14-35:3 (stating that declarations were submitted for first time in connection with motions for reconsideration).)

Like Mr. Reed, each of these former employees had been contacted by Mr. Pendleton (and, in some cases, by both Mr. Pendleton and Ms. Trimarco). According to their uncontroverted declarations, these four individuals were never instructed not to communicate with Smart. (See Shearer Decl. ¶ 3; Dyson Decl. ¶ 3; Wolf Decl. ¶ 3; Wolfe Decl. ¶ 3.) The entire sanctions proceeding turned on the assertion that a contrary instruction had been given to Mr. Reed in violation of court order. These declarations provide powerful circumstantial evidence of what is likely to have happened in the communication with Mr. Reed. Each of the four was contacted in relative proximity to when Mr. Reed was contacted; and the conversation with each involved the similar topic of assessing availability for deposition by Smart. (See Hearing Tr. at 25:2-34:12.) The Court finds it within reason that if Mr. Pendleton and Ms. Trimarco were going to violate the Court's order regarding former employees' communications with Smart, there is no reason they would have differentiated between Mr. Reed and the four others. The evidentiary record shows that Mr. Reed was not a more important witness than any of these four—and substantially less important than at least a couple of them. Nothing in the record

4

suggests that any of the four has any motive to lie in their declarations to protect Mr. Pendleton or Ms. Trimarco.

The Court also found the testimony of Mr. Pendleton and Ms. Trimarco at the December 14 hearing to itself provide a powerful, additional basis to vacate the June 29 Order. Both reiterated—strongly and clearly—that Mr. Pendleton never gave Mr. Reed an instruction that violated a court order. (See, e.g., Hearing Tr. 38:15:17 (Pendleton testimony); 86:23-25 (Trimarco testimony); 88:12-16 (Trimarco testimony).) It is inconceivable to this Court that after all of the proceedings in this matter, and the danger that false testimony carries at such a point, that either of these individuals would get on the witness stand (or be put on the witness stand by their lawyers), only to lie. The Court credits their testimony.

Thus, the Court is confronted with one witness (Mr. Reed) who has testified credibly that he was instructed not to speak with Smart (which, if such an instruction had been given would have violated a court order), and four other similarly situated declarant-witnesses who state unequivocally that they were not. It is of course possible that Mr. Reed was treated differently than the others, but nothing in the record suggests any basis for such a difference.

Despite these new declarations and the additional testimony of Mr. Pendleton and Ms. Trimarco, the Court remains perplexed in this matter. It makes no sense for Mr. Reed to have maintained that he was instructed by Mr. Pendleton not to speak with Smart if that instruction was never given. The Court has previously found his deposition testimony credible—and that view has not changed.

5

(See ECF No. 156 at 2.)  It is true that during the final—fourth—time that Mr. Reed was questioned about the single conversation at issue, he did not mention that instruction when describing what he could remember about the call.  (See Transcript of Deposition of Jeffrey Reed, dated November 7, 2016 ("Nov. 7 Reed Dep. Tr.", ECF No. 305-2) 42:21-50:14; 90:23-91:7.)  But that omission alone is unsurprising.  Several more months had passed in the interim and he had no reason to focus on that fact versus any other because he was not informed as to what particular interest that the questioners had in deposing him again.  Moreover, at the end of that deposition, counsel for Smart (who was present) finally raised the issue.  He asked specifically whether Mr. Reed recalled testifying to that instruction during prior testimony, and Mr. Reed stated that he did; Mr. Reed then spoke clearly about the instruction and that it played a role in his decision not to cooperate with one side or the other after that.  (Id. 95:14-96:19.)

Courts cannot always resolve questions of fact with certainty.  That is why the law requires burdens of proof of varying degrees.  Based on the record now before the Court, the "clear and convincing evidence" standard is not met.  That is enough for the Court to vacate its order—and its findings—of June 29, 2016.  (See ECF No. 156.)

The Clerk of Court is directed to modify the docket entry at ECF No. 156 to read "Vacated as per Judge's Orders dated 12/14/2016, Doc. # 312 and January 12, 2017, Doc. # 316." The Clerk of Court is further directed to terminate the motion at to ECF No. 299 and to terminate this action.

SO ORDERED.

Dated:    New York, New York
          January 13, 2017

                                        _____
                                          KATHERINE B. FORREST
                                          United States District Judge